UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Elizabeth E. Brown

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| XAVIER PS, INC., | ) | Bankruptcy Case No. 09-32324 EEB |
| EIN: 81-0633257, | ) | Chapter 11 |
| | ) | |
| Debtor . | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| HIGH COUNTRY ASSETS, INC., | ) | Bankruptcy Case No. 09-32325 EEB |
| EIN: 20-5426321, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | **Jointly Administered Under** |
| | ) | **Case No. 09-32324 EEB** |

**ORDER ON MOTION TO DISGORGE AND APPLICATION FOR COMPENSATION**

THIS MATTER is before the Court on two related matters: (1) The Debtors' "Motion to Require Disgorgement by Their Former Counsel of All Fee Payment Taken Without Court Approval and Disclosure in the Chapter 11 Proceedings" ("Motion to Disgorge") and the Objection by Edward Levy and Edward Levy, P.C.; and (2) the "Final Application for Allowance of Attorneys Fees and Reimbursement of Costs ("Fee Application") for Edward Levy, P.C." ("Applicant") and the Debtors' Objection. The primary issue before the Court is whether the law firm should be required to forfeit all fees because it failed to disclose a second retainer obtained post-petition and it applied both the pre- and post-petition retainers to fees without first filing a fee application and obtaining court approval. Following an evidentiary hearing, the Court hereby FINDS and CONCLUDES:

1.   Background

Both Debtors operate Servpro franchises. They initially retained Mr. Levy as a business and financial consultant to assist them in negotiating a restructured loan with their primary lender, Wachovia SBA Lending, Inc. ("Wachovia"). When settlement discussions reached an impasse about one year later, Mr. Levy filed a chapter 11 petition on behalf of the Debtors on October 22, 2009. As "small business debtors," as defined by 11 U.S.C. § 101(51)(D),[1] these Debtors were required by § 1121(e) to either file a plan or obtain an extension of time to do so by August 18, 2010, 300 days after the petition date. Unfortunately, they did not meet this

---

[1] Unless otherwise specified, all references to "section" or "§" in this Order are references to the Bankruptcy Code, 11 U.S.C. § 101, et. seq., and all references to "Rule" are references to the Federal Rules of Bankruptcy Procedure.

deadline.  Consequently, the United States trustee moved for and obtained dismissal of this case.

Prior to the bankruptcy filing, the Debtors had signed a fee agreement with Mr. Levy's firm that stated in part: "**Retainer.**  We will require a retainer in the amount of $40,000.  We will apply this retainer against all earned pre-petition fees and apply the remainder against our normal statements when earned and *approved by the U.S. Bankruptcy Court after the appropriate fee application process*."  Following the bankruptcy filing, Mr. Levy filed his firm's application for employment.  He also sought approval of his post-petition retainer, which then had a balance of $30,000.  Paragraph 12 of the application for employment states: "All fees and expenses of Edward Levy, P.C. will be disbursed from the trust account or by paid by Debtors only upon approval by the Court after a request made in accordance with the Bankruptcy Code and applicable rules."  In due course, the Court approved both the employment and the retainer, but its Order specifically stated that "the fees and costs charged by Edward Levy, P.C. are subject to allowance or review by the Court in accordance with 11 U.S.C. §§ 329, 330 and 331."  Mr. Levy never requested an interim payment procedure to allow periodic payments of fees and costs.

On January 29, 2010, Wachovia filed a Motion to Prohibit Use of Cash Collateral.  Since § 363(c) prohibits the use of cash collateral without either consent of the lender or a court order, the Court entered its Order prohibiting use on February 1, 2010, without awaiting any response from the Debtors.  This did not prompt the Debtors to immediately seek court permission.  Instead they waited to file a motion to use cash collateral until April 7, 2010, more than three months later.  Before a final hearing on the Debtors' motion, the parties reached an agreement and submitted a stipulated "Order (1) Authorizing Use of Cash Collateral, (2) Providing Superpriority Administrative Expense Status, (3) Granting Adequate Protection and (4) Modifying the Automatic Stay" ("Cash Collateral Order"), which entered on May 13, 2010.

The Cash Collateral Order made reference to the Debtors' professional fees.  In paragraph 8, Wachovia agreed to "carve-out" from its collateral value an amount necessary to pay "the *allowed* and unpaid professional fees and disbursements incurred by the Debtors' counsel."  It also stated that the Debtors were not able to use cash collateral to pay such fees in excess of the amounts reflected in the Debtors' budgets.  The budgets for the period of April - June, 2010 contained a line item for "Professionals (Legal and Accountant)" in the amount of $5,100 for Xavier and $700 for High Country.  Paragraph 19 further provided:

> Immediately upon entry by this Court (nothwithstanding any applicable law or rule to the contrary), the terms and provisions of this Order shall become valid and binding upon and inure to the benefit of the Debtors and Wachovia, the creditors, all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the either [sic] Debtor bankruptcy case, or upon dismissal of either Debtor case.

Mr. Levy testified that he believed this language in the Cash Collateral Order allowed him to apply his retainers to his fees without the need for a fee application or a court order allowing fees.

On June 28, 2010, Mr. Levy requested an additional $5,000 for his fees. The Debtors responded by sending him $6,000 on July 1st. Mr. Levy deposited these funds into the firm's operating account. The payment appeared in the disbursements section of the Debtors' July, 2010 monthly report, but Mr. Levy did not file an amended 2016 disclosure, nor did he request court approval until March 24, 2011. Mr. Levy testified that this was the first case in which he had received an additional post-petition retainer from a client in a chapter 11 case and he was otherwise preoccupied at the time of its receipt because of his daughter's serious health complications. Mr. Levy also failed to file any fee applications until March 24, 2011. Mr. Levy testified that it was his practice to only file a final fee application at the end of a case.

    2.    <u>Discussion</u>

A debtor's transactions with attorneys are governed by 11 U.S.C. § 329. Section 329(a) requires any attorney representing a debtor in a bankruptcy case to file a statement of the compensation paid or agreed to be paid with the court "whether or not such attorney applies for compensation under this title. . . ." Rule 2016(b) specifies that the statement required by § 329 must be provided to the U.S. Trustee within 14 days after the order for relief and further requires that: "A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed." These provisions enable the bankruptcy court to fulfill its obligation to carefully scrutinize the compensation paid to the debtor's attorney in order to prevent overreaching by the attorney and provide protection for the creditors. 3 *Collier on Bankruptcy* ¶ 329.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *see also In re Busy Beaver Bldg. Ctrs., Inc.,* 19 F.3d 833, 844 (3rd Cir. 1994); *In re Land*, 116 B.R. 798, 804 (D. Colo. 1990), *aff'd* 943 F.2d 1265 (10th Cir. 1991).

The disclosure requirements of § 329 are mandatory, not permissive. *Turner v. Davis, Gillenwater & Lynch*, 4 F.3d 1556, 1565 (10th Cir. 1993). "Negligent or inadvertent omissions 'do not vitiate the failure to disclose.'" *Neben & Starrett, Inc., v. Chartwell Fin. Corp.*, 63 F.3d 877, 881 (9th Cir. 1995). An attorney who fails to comply with the disclosure requirements of § 329 and Rule 2016(b) forfeits any right to compensation and may be ordered to return fees already received. *Turner*, 4 F.3d at 1565; *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 848 (10th Cir. BAP 1997). Actual harm to the estate is not required and even a negligent or inadvertent failure to disclose is sufficient to deny fees. *Neben & Starrett*, 63 F.3d at 881; *Smitty's*, 201 B.R. at 849 (upholding the bankruptcy court's denial of all compensation to a chapter 11 debtor's attorney and order to disgorge an undisclosed retainer based on its finding that counsel's failure to disclose receipt of the retainer in a Rule 2016 statement was a clear violation of § 329 and Rule 2016(b) that was sufficient, in itself, to deny all fees, even if the failure was negligent or inadvertent).

Sections 330 and 331 govern the award of compensation to professionals employed under § 327. Section 330(a)(1) provides that the court may award compensation to a professional person employed under § 327 only after notice and a hearing. Section 331 allows counsel to apply for court approval of interim compensation not more than once every 120 days during the pendency of a case. Supplementing these sections is Rule 2016(a), which requires that "[a]n

entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application" containing certain specified information. There is no question that an attorney hired to represent a debtor-in-possession must give notice to creditors and receive approval *before* being compensated by the estate. Absent compliance with the Bankruptcy Code and Rules, an attorney has no right to an award of compensation. *In re Anderson*, 936 F.2d 199 (5th Cir. 1991); *Lavender v. Wood Law Firm*, 785 F.2d 247 (8th Cir. 1986). An attorney who fails to do so may be ordered to return all compensation received. *In re Land*, 943 F.2d 1265 (10th Cir. 1991); *Anderson*, 926 F.2d 1265. The fee application and court approval requirements apply even if the attorney is not seeking compensation in excess of a pre-petition retainer. *In re Ford*, 2011 WL 652474 (Bankr. M.D. Fla. 2011).

As the bankruptcy court explained in *In re Marin*, 256 B.R. 503, 507 (Bankr. D. Colo. 2000):

> Under 329, and the related Rule 2016(b), an attorney must disclose all fees paid, or agreed to be paid, for services performed for a debtor. If the attorney wants to be paid out of the estate, then an application must be filed under section 330 of the Code, and the fees allowed. . . . *There is no other way for an attorney to be paid!* An attorney who extracts payments from debtors other than pursuant to proper disclosure, or to allowance under section 330, stands in violation of the provisions of the Bankruptcy Code, and may properly be stripped of all fees.

(citations omitted, emphasis in the original.)

The bankruptcy court retains jurisdiction to approve attorneys' fees under § 330 even after the underlying case is dismissed. *In re 5900 Associates, Inc.*, 468 F.3d 326 (6th Cir. 2006)(finding that attorneys' fees from a prior chapter 11 could not be counted as debt when determining debtor's insolvency at the time of a transfer because the fees were unenforceable and could not be collected, despite a promissory note from the debtor for such fees, since the attorney had failed to file a fee application in the dismissed case). These are strict requirements imposed on debtor's counsel. Attorneys who venture into the world of chapter 11 without prior experience or without associating with experienced counsel often run afoul of these and other requirements, causing them to face harsh consequences.

Mr. Levy is one of these unfortunate attorneys. After changing careers to become a lawyer mid-life, Mr. Levy testified that he began practicing in the bankruptcy field around October, 2005. Previously, he had enjoyed a substantial and sophisticated accounting practice that had exposed him to workouts, management consulting for distressed companies, and chapter 11 cases. It was this background that apparently drew the Debtors to him because they were initially trying to work something out with their lenders and landlord. Because of his experience as an accountant in bankruptcy cases, Mr. Levy believed he had the necessary background to represent a chapter 11 debtor on his own. He did not, however, have enough experience as a bankruptcy attorney to appreciate all of the legal requirements inherent in representing a debtor-in-possession. His lack of experience is reflected not only in his failure to disclose the additional

retainer and to wait for court authorization before applying the retainers, but it is also exhibited in his failure to seek approval for the use of cash collateral for over five months and his failure to either a file a plan and disclosure statement or a motion requesting an extension before the passing of the 300-day deadline applicable to these small business debtors.

The Court found Mr. Levy's testimony credible.  It believes that extenuating circumstances surrounding his daughter's health contributed to Mr. Levy's failure to disclose the additional retainer.  It also believes that Mr. Levy mistakenly believed he was authorized to apply the retainers without first obtaining court approval based on language in the Cash Collateral Order.  All the Cash Collateral Order allowed, however, was the use of cash collateral to pay *allowed* fees up to the amount specified in the budgets.

Mr. Levy's counsel argued that his services benefitted this estate and, therefore, he should not have to forfeit all of his fees.  This argument led the Court to hold an evidentiary hearing on this matter, rather than merely applying the "strict liability" approach employed by most courts that order complete forfeiture of fees.  But as well intentioned as Mr. Levy was, the Court was unable to conclude that he conferred a substantial benefit on the estate from his post-bankruptcy services.

Bankruptcy courts are charged with policing the integrity of the bankruptcy system and enforcing the requirements of the Code and the Rules.  Had Mr. Levy needed interim payments for whatever reason, the proper course of action would have been to seek approval of an interim payment procedure or to file interim fee applications.  Unfortunately, he did neither.  The language relied on in the Cash Collateral Order and a line item in a cash collateral budget cannot contradict the dictates of the Code.   Accordingly, the governing case law in this district requires that the Fee Application be disallowed and that Mr. Levy be ordered to disgorge all fees paid to him by the Debtors.

3. Conclusion

For the reasons set forth above, it is therefore ORDERED that the Final Application for Allowance of Attorneys Fees and Reimbursement of Costs for Edward Levy, P.C. is DENIED.

FURTHER ORDERED that Debtors' Motion to Require Disgorgement by Their Former Counsel of All Fee Payment Taken Without Court Approval and Disclosure in the Chapter 11 Proceedings is GRANTED.

FURTHER ORDERED that Edward Levy and Edward Levy, P.C. shall disgorge the pre- and post-petition retainers in the amount of $36,000 to the Debtors within 21 days from the date of this Order.

DATED: February 27th, 2012.

BY THE COURT:

*Elizabeth E. Brown*

Elizabeth E. Brown,
United States Bankruptcy Judge